*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0202p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

KAREN KOVACS,

*Plaintiff-Appellant,*

*v.*

STANLEY CHESLEY,

*Defendant-Appellee.*

No. 04-3019

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00020—Sandra S. Beckwith, Chief District Judge.

Argued: March 16, 2005

Decided and Filed: May 2, 2005

Before: MERRITT and ROGERS, Circuit Judges; DUPLANTIER, District Judge.[*]

---

## COUNSEL

**ARGUED:** D. Joe Griffith, DAGGER, JOHNSTON, MILLER, OGILVIE & HAMPSON, Lancaster, Ohio, for Appellant. Lynne M. Longtin, RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellee. **ON BRIEF:** D. Joe Griffith, DAGGER, JOHNSTON, MILLER, OGILVIE & HAMPSON, Lancaster, Ohio, for Appellant. Lynne M. Longtin, Carolyn A. Taggart, RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

ROGERS, Circuit Judge. Plaintiff Karen Kovacs appeals the district court's order dismissing this case for lack of federal diversity jurisdiction for failure to meet the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a). Because Kovacs has established that the amount in controversy in this case is over $75,000, the judgment of the district court is reversed and the case remanded for further proceedings.

The underlying cause of action in this case is legal malpractice. The action was filed on January 8, 2003, following the dismissal on ripeness grounds of an earlier action. Kovacs alleged that she had retained Defendant Stanley Chesley as her attorney for purposes of representing her in

---

[*] The Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

a class action litigation settlement program for the recipients of defective breast implants. According to the complaint, the type of damage Kovacs suffered due to the defective breast implants qualified her for up to $100,000 under the settlement program. Kovacs alleged that Chesley failed to review her medical records properly, and therefore failed to submit Kovacs's claim under the proper category of claimant. As a result, Kovacs received only $9,180.00 from the settlement program. Kovacs alleged that Chesley committed legal malpractice by failing to submit her claim in a manner that would entitle her to up to $100,000.[1] Jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332(a). The amount in controversy alleged by Kovacs was $100,000. On March 14, 2003, Chesley filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, claiming that Kovacs's claim did not satisfy 28 U.S.C. § 1332(a), which requires that the amount in controversy exceed $75,000. According to Chesley, the amount Kovacs could have received under the class action settlement program was capped at $50,000, and therefore the amount she could recover from Chesley under no set of circumstances could exceed $50,000, an insufficient sum. Following jurisdictional discovery, the district court on December 2, 2003, granted Chesley's motion to dismiss for lack of subject matter jurisdiction.

The amount in controversy requirement was met in this case because Kovacs alleged damages in the amount of $100,000, there is a legal basis for her claim, and there is some chance that she could recover the amount claimed. The question of whether, but for Chesley's alleged malpractice, Kovacs could have obtained proper documentation at the time she hired Chesley to represent her in the settlement program is an issue that may be addressed on motion for summary judgment on the merits, but the issue does not warrant dismissal for lack of jurisdiction.

There is jurisdiction in this case because it does not appear to a legal certainty that Kovacs's claim is for less than $75,000. The legal certainty test was established by the Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), and clearly applies in cases like this one that do not involve liquidated damages. *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973). As explained by the Supreme Court, ultimate loss on the merits, even if based on a legal argument that is clear from the outset, is not enough to preclude jurisdiction, where the claim is apparently in good faith:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.* The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable[2] for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

---

[1] Kovacs had also sought damages for mental suffering, but this claim was separately dismissed for failure to state a claim upon which relief may be granted. Kovacs does not argue on appeal that this ruling was error.

[2] In context it appears that the Supreme Court was not using "colorable" to mean "seemingly valid and genuine," as the word is primarily understood today, but rather was using the word in its different, secondary connotation, as meaning "feigned, factitious, [or] counterfeit." WEBSTER'S THIRD NEW INT'L DICTIONARY 449 (Merriam-Webster, Inc., 2002).

303 U.S. at 288-90 (footnotes omitted) (emphasis added).

Although Chesley has raised an argument that could, if successful, demonstrate that he is entitled to summary judgment, the argument does not demonstrate that the amount in controversy in this case is less than the $100,000 alleged by Kovacs. Chesley argues that at best, Kovacs has made out a claim that Chesley failed to submit her claim to the settlement program as a current disease compensation claimant, which, under the terms of the program, would have entitled her to a maximum of $50,000. Chesley argues further that although Kovacs claims that she was also eligible for "rupture benefits" of $50,000, given to certain claimants who have suffered a ruptured breast implant, Kovacs could not have actually recovered under the settlement program for her breast implant rupture. According to Chesley, rupture benefits were only permitted under the settlement program once a certain type of medical documentation had been filed, and the evidence provided by Kovacs in support of her opposition to the motion to dismiss was not of the type a rupture benefit claimant was required to submit to the program. Therefore, Chesley argues, because Kovacs cannot demonstrate that she was entitled to rupture benefits, she cannot show that she would have been entitled to more than $50,000 from the settlement program, and so her recovery against Chesley would be limited to $50,000, and accordingly, there is no subject matter jurisdiction.[3]

This argument misperceives the critical difference between a dismissal for failure to meet the amount in controversy requirement and a dismissal following summary judgment. The test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits in only a very superficial way. Whereas a court considering a summary judgment motion could examine defenses, such as qualified immunity, res judicata, or the application of a statute of limitations, a court considering a dismissal for failure to meet the amount in controversy requirement cannot. *See St. Paul Mercury Indemnity Co.*, 303 U.S. at 289; *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997-98 (6th Cir. 1976). In the amount in controversy context, "most courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the *type of damages* sought by the plaintiff." *Wood*, 473 F.2d at 274 (emphasis added); *see also Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990). For example, in *Parmelee v. Ackerman*, the plaintiffs sought damages for a breach of contract in an amount less than the jurisdictional requirement, but then also sought damages for "embarrassment and mental suffering." 252 F.2d 721, 722 (6th Cir. 1958). This court held that the amount in controversy requirement had not been satisfied because, under Ohio law, recovery was only permitted for intentionally caused emotional distress, and the plaintiffs had not alleged any intentional acts. *Id.*

In contrast, where as in this case state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement. *See Worthams*, 533 F.2d at 997. "Absolute certainty is not required. It is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Id.* (internal quotation omitted). For instance, in *Wood v. Stark Tri-County Building Trades Council*, the plaintiff had originally sued a number of labor organizations for $1.5 million compensatory damages and $1.5 million punitive damages for the malicious and willful destruction of personal property, allegedly perpetrated in retaliation for his employment of non-union labor. 473 F.2d at 272-73. At the time, the amount in controversy requirement was $10,000. During discovery, the plaintiff admitted that the cost of repairing his personal property was only $3,000. Because Ohio law permitted punitive damages for willful and malicious torts, and because Ohio law did not require a "mathematical relationship" between actual and punitive damages, the Sixth Circuit held that it was possible that the plaintiff

---

[3] At oral argument, counsel for Chesley agreed that nothing in the settlement program prevents a given individual from recovering $50,000 for each type of claim, for a total of $100,000.

could recover more than $7,000 in punitive damages, and that therefore, the amount in controversy requirement had been satisfied. *Id.* at 274.    In short, to deny diversity jurisdiction it is generally not enough to show that the defendant will prevail on the merits.   Such arguments are more appropriately made in support of a motion for summary judgment.[4]

Moreover, Kovacs' claim does not fall within the narrow category of state law claims where the "type of relief" is unavailable under state law.  Such an argument could have conceivably been made if Ohio law precluded legal malpractice damages for more than the possible recovery in the underlying lawsuit.  The Ohio Supreme Court, however, has explicitly rejected such a limitation.  In *Vahila v. Hall*, the Ohio Supreme Court set forth the standard for recovery in legal malpractice claims:

> [T]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.  We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case.  Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. *However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter*.  Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim.

77 Ohio St. 3d 421, 427-28 (Ohio 1997) (internal citations omitted) (emphasis added).  Thus Ohio has  refused to adopt a "blanket proposition" requiring a demonstration of success on the merits of the underlying claim.

Kovacs has alleged all three elements of the Ohio cause of action for legal malpractice.  First, Chesley owed Kovacs a duty, as she had retained him.  Second, Kovacs has alleged that he breached that duty by failing to research and file her claim in a manner that may have entitled her to more money.  And third, Kovacs has alleged both that her potential damages are $100,000, and that there is a causal relationship between Chesley's actions and the loss.  With respect to the amount claimed, Kovacs submitted the affidavit of an attorney who was "familiar with the compensation categories established by the Breast Implant Claims Administration."  In his opinion, Kovacs would have been

---

[4]This distinction is supported by the language of 28 U.S.C. § 1332 itself.  This statute, which establishes the amount in controversy requirement, also establishes a penalty to be applied when the plaintiff, at the conclusion of the matter, recovers less than the jurisdictional amount.

> Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

28 U.S.C. § 1332(b).  The statute therefore contemplates that cases will be heard in federal court in which it is unlikely the plaintiff will be able to recover in excess of the jurisdictional amount.  Plaintiffs who ultimately do fail, as predicted, to recover in excess of $75,000 will suffer the penalty § 1332(b).  This penalty in theory prevents the wholesale abuse of diversity jurisdiction that the otherwise low standard of the amount in controversy requirement would permit.  Therefore, if, at the conclusion of this case, Chesley is proven to be correct about Kovacs's inability to recover for the breast implant rupture, and Kovacs is found to be entitled to only $50,000, she may be subject to the penalty of § 1332(b).

entitled to benefits for both a qualifying current disease and a qualifying breast implant rupture, for a total of $100,000. And with respect to the causal relationship, Kovacs has alleged that but for Chesley's failure to process her claim properly and ensure that she obtained medical data in the proper form, she would have been entitled to $100,000 under the settlement program.

The fact that Chesley submitted an affidavit that contradicts the testimony of Kovacs's expert does not mean that Ohio rejects the type of damages sought by Kovacs. Under *St. Paul Mercury Indemnity Co.*, it is not legally certain that an Ohio court would not award Kovacs the full $100,000 despite her alleged inability to demonstrate that she would have received rupture benefits under the program, because success on the underlying matter is not categorically required under Ohio law to demonstrate legal malpractice. *See Vahila*, 77 Ohio St. 3d at 427-28. Kovacs argues that it was malpractice for Chesley to fail to recognize that the raw medical data provided by Kovacs qualified her for inclusion in the two categories, and to fail to ensure that she obtained evidence in a submissible form. See Complaint at ¶¶5-6. Indeed, if it is to be expected that lay persons like Kovacs know in advance of seeking legal advice what the exact requirements of the settlement program are, and have all medical paperwork completed in the fashion required by the settlement program, then there would be no need to hire attorneys at all. This case therefore presents an excellent example of a situation in which the plaintiff may not be able to demonstrate success on the underlying matter, but nonetheless is permitted to recover for legal malpractice, as the inability to demonstrate success is directly linked to the attorney's alleged malpractice. *Vahila* in fact approvingly quotes a commentator discussing a similar situation—that of attorneys who negligently conduct discovery—and criticizing the result that would be reached under a rule requiring a demonstration of success on the underlying matter:

> [P]roblems await those who do proceed with the "trial within a trial." For example, the attorney in the original action may have negligently failed to pursue the discovery that would have insured success. If the results of that same discovery are now necessary to prove the merit of the underlying claim—and the passage of time has precluded obtaining that information—the attorney by his own negligence will have protected himself from liability. In such a case, the more negligent the attorney, the more difficult is the plaintiff's task of proving causation.

*Vahila*, 77 Ohio St. 3d at 427 (quoting Note, *The Standard of Proof of Causation in Legal Malpractice Cases*, 63 CORNELL L. REV. 666, 671 (1978)). Because Ohio law recognizes the possibility that Kovacs will recover $100,000, even though her evidence was not in a submissible form, Kovacs's claim meets the amount in controversy requirement.

Accordingly, we REVERSE the judgment of the district court and remand for further proceedings.