CLAY, Circuit Judge,
concurring in part and dissenting in part.
*983 COOK, Circuit Judge.
This suit stems from a state-court medical-malpractice case brought by the guardian of a minor, LaMarquist Matthews, against Dr. Stephanie Storgion, alleging injuries from the negligent placement of a catheter. In the course of that litigation, Storgion’s attorney, Teresa Sigmon, allegedly pressured one of Matthews’s expert witnesses to withdraw from testifying. Matthews then brought this case against the doctor, the defense lawyer, her law firm, and the malpractice carrier for: abuse of process, intentional interference with a business relationship, inducement/procurement of a breach of contract, and coercion of a witness. The district court dispensed with certain of the plaintiffs’ claims on summary judgment—the witness-coercion claim, and all claims against the doctor—leaving for trial the remaining claims against the attorney and her law firm, and those against the insurance carrier. Those parties obtained leave to file this interlocutory appeal seeking review of the denial of summary judgment.
We determine that Tennessee law warranted the granting of summary judgment to the insurance carrier; it cannot be held vicariously liable for the acts of the lawyers and the firm. We further decide that summary judgment ought to have been granted to all defendants on the plaintiffs’ claims for abuse of process. We affirm the remainder of the district court’s decision.
I
The Appellants here include State Volunteer Mutual Insurance Company (SVMIC), Storgion’s medical malpractice insurer, and the attorneys it retained to defend Dr. Storgion, Teresa J. Sigmon and the Sigmon Law Firm. Appellees are Matthews, through his guardian, together with the two law firms representing him.
In the underlying malpractice action, Matthews’s attorneys identified Dr. Walter Scott, Ph.D., as an expert witness. While deposing Scott, Sigmon learned that he was an FDA employee and that the FDA prohibited him from testifying as an expert witness, absent special permission that he had not yet obtained. Scott had, however, obtained approval from his supervisor and other FDA managers to testify as a “fact witness” and to act as a consultant in the case.
Sigmon and the attorneys for the other malpractice defendants sought to exclude Scott’s testimony on several grounds. First, they moved on the grounds that his lack of a medical license rendered him incompetent to testify. The state court denied the motion. Next, they filed a motion in limine, and the court deferred a ruling. Finally, they filed motion to exclude portions of Scott’s proposed testimony, which the court granted.
Two years after Scott’s deposition, after the close of discovery and after the court ruled on defendants’ various motions to exclude, Sigmon e-mailed Scott’s FDA supervisor, requesting a copy of the FDA’s approval of Scott’s activities in the case and all other documents relating to Scott’s employment. Over a four-month period, Sigmon initiated several more communications with the FDA. Sigmon reported to SVMIC and Storgion via e-mail about one of these FDA communications. Ostensibly at the FDA’s request, Sigmon also sent the FDA copies of Scott’s deposition and of certain pleadings. After these communications between Sigmon and the FDA, Scott withdrew his services by letter to Matthews’s attorney. Scott wrote that “Sigmon’s inquiry ... apparently raised *984 the specter of the possible impression of wrong-doing on [Scott’s] part,” and that his division director ordered him to cease contact with the attorneys. This suit followed.
II
A. Jurisdiction
As a threshold matter, Appellants contend that Appellees’ claims fail the $75,000 amount-in-controversy requirement for this court’s exercise of diversity jurisdiction. This court “should consider the amount alleged in a complaint and should not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount.” Massachusetts Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir.1996) (quotation omitted) (setting out the standard for district courts); see also Kovacs v. Chesley, 406 F.3d 393 (6th Cir.2005) (finding jurisdiction in the absence of a legal certainty that the plaintiffs claim did not meet the jurisdictional amount). Appellees alleged “damages in excess of $75,000.00” for, among other things, sums paid to Scott for his services, for the time and expense involved in procuring replacement consultants/witnesses, and for punitive damages or statutory treble damages under Tenn.Code Ann. § 47-50-109 (2004). Nothing indicates that Appellees could not in good faith claim the jurisdictional amount at the time they filed their complaint. See Kovacs, 406 F.3d at 395-96 (noting that events occurring after filing do not oust jurisdiction). This court being unconvinced to a “legal certainty that the claim is really for less than the jurisdictional amount,” we reach the merits of this suit. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).
B. The Merits
In considering an interlocutory appeal from the denial of summary judgment, this court reviews de novo the district court’s denial if the decision turns on purely legal grounds, and for abuse of discretion if the presence of a genuine issue of material fact prompted the denial. Black v. Roadway Express, Inc., 297 F.3d 445, 448 (6th Cir.2002). A district court necessarily abuses its discretion, however, where it commits an error of law. See Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (“A district court by definition abuses its discretion when it makes an error of law.”); Southward v. South Cent. Ready Mix Supply Corp., 7 F.3d 487, 492 (6th Cir.1993). As always, the court construes the evidence, and draws all reasonable inferences therefrom, in the light most favorable to the nonmoving party. Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 415 F.3d 487, 493 (6th Cir.2005).
1. Immunity
Appellants argue on appeal that absolute and qualified immunity shield them from liability for Appellees’ claims. Appellants, however, neglected to advance these contentions before the district court and, absent any “exceptional circumstances,” we will not “consider an issue not passed on below.” St. Marys Foundry, Inc. v. Employers Ins. of Wausau, 332 F.3d 989, 995-96 (6th Cir.2003) (quotation omitted). We find no exceptional circumstances here.
2. Vicarious Liability
SVMIC argues that it cannot be held vicariously liable for Sigmon’s conduct. The parties agree on the pertinent facts— Sigmon informed SVMIC via email that she contacted the FDA in regard to Scott, and Sigmon later sent SVMIC billing statements reflecting her FDA contacts. *985 SVMIC contends that silence following after-the-fact notice is inadequate to impose vicarious liability under Tennessee law. The district court, relying on Givens v. Mullikin, 75 S.W.3d 383 (Tenn.2002), found a genuine issue of material fact as to whether “SVMIC’s inaction in light of [its] direct knowledge [of Sigmon’s conduct] infers [sic] that SVMIC at least in part knowingly authorized Sigmon’s actions.” SVMIC’s conduct, however, falls short of the vicarious-liability test the Tennessee Supreme Court announced in Givens.
The Givens court held that insurers may be vicariously liable for acts or omissions of an attorney hired to represent an insured where the insurer exercised “invidious” actual control by “direct[ing], eom-mand[ing], or knowingly authorizing]” the acts or omissions. Id. at 395; see also id. at 399 (“[S]ome exercise of actual control, whether it be through direction or knowing authorization, must be alleged before a complaint can be held to properly state such a claim.”). To recover against an insurer for an attorney’s conduct, “a plaintiff must show that the attorney’s tortious actions were taken partly at the insurer’s direction or with its knowing authorization.” Id. at 396. The court explained that “cases in which an insurer may be held hable under an agency theory will be rare indeed.” Id. at 395.
We find SVMIC’s inaction following after-the-fact notice of Sigmon’s conduct inadequate to constitute “actual control” under Givens. An insurer’s exercise of actual control “seeks, either directly or indirectly, to affect the attorney’s independent professional judgment, to interfere with the attorney’s unqualified duty of loyalty to the insured, or to present a reasonable possibility of advancing an interest that would differ from that of the insured.” Id. at 394 (quotation omitted). Sigmon exercised independent professional judgment in contacting the FDA, and her judgment could not have been affected by SVMIC’s receipt of after-the-fact notice. See id. at 395-96 (“We do not hold today ... that an insurer may be held liable for any acts or omissions resulting solely from the exercise of [the] attorney’s independent professional judgment.”). Although the district court found an issue of fact as to whether “SVMIC’s inaction ... knowingly authorized” Sigmon’s conduct, the Givens court, in discussing “knowing authorization” as a component of “actual control,” contemplated an active role in the attorney’s conduct, certainly more than SVMIC’s entirely passive conduct presented here. We therefore hold that the district court committed an error of law in denying summary judgment to SVMIC.
3. Wrongdoer by Ratification
Appellees proffer “wrongdoer by ratification” as an alternate theory under which to hold SVMIC vicariously hable for Sigmon’s conduct. To this end, Appellees rely on the 1955 Tennessee Supreme Court case of Howard v. Haven, 198 Tenn. 572, 281 S.W.2d 480 (1955), superceded in part by statute as recognized in Cole v. Arnold, 545 S.W.2d 95 (Tenn.1977). A theory of wrongdoer by ratification may remain viable in some contexts, but Givens expressly limited insurers’ vicarious liability for an attorney’s conduct to those situations in which the insurer exercises some form of actual control over the attorney’s actions. Givens, 75 S.W.3d at 396. Appellees maintain that the ratification theory presented in Howard must be applicable in the insurance context because Givens cited Howard. But Givens cited Howard only for the proposition that, after Givens, an attorney remains subject to “direct liability for his or her own conduct.” Id. at 398 n. 8.
*986 4. Abuse of Process
Appellees alleged abuse of process as Count I of their Complaint. Tennessee recognizes two elements to an abuse-of-process claim: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. Givens, 75 S.W.3d 383, 400 (Tenn.2002). Appellants argued in the district court that Appellees could prove neither element. First, Appellants contended that Appellees could not show Sigmon’s malevolence and therefore could not satisfy the first element of the claim. Additionally, Appellants argued that Appellees pointed to no “process” Sigmon used in her activities. The district court identified a genuine issue of fact as to the first element—Sig-mon’s intent—without addressing the second.
Appellees claim that Sigmon’s “asserting her position as a lawyer, sending [copies of] depositions and pleadings to Scott’s supervisor, and ... threatening to] pursu[e] further ‘action’ if she did not get what she wanted” constitute utilization of process. Tennessee, however, subscribes to a narrower definition of process. Tennessee courts have defined process as “that ‘which emanates from or rests upon court authority, and which constitutes a direction or demand that the person to whom it is addressed perform or refrain from doing some prescribed act.’ ” Bell v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, PA, No. 03A01-9707-CV-00292, 1998 WL 24414, at *2 (Tenn.Ct.App. Jan.20, 1998) (quoting 1 Am.Jur.2d Abuse of Process § 2 (1994)). Abuse of process “refer[s] to the use of a writ, order, or command of the Court in the course of a judicial proceeding.” Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc., 358 F.Supp. 17, 21 (E.D.Tenn.1972). Because Appellees point to nothing in Sigmon’s conduct that “emanate[d] from or rest[ed] upon court authority,” Bell, 1998 WL 24414, at *2, the district court erred in denying Appellees summary judgment on this claim.
5. Intentional Interference with a Business Relationship
Count II of Appellees’ Complaint alleges intentional interference with a business relationship. This tort requires (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third parties; (2) the defendant’s knowledge of that relationship; (3) the defendant’s intent to cause the breach or termination of the relationship; (4) the defendant’s improper motive or improper means; and (5) damages. Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn.2002). Appellants proffer three reasons the district court erred in denying summary judgment on this claim. First, they contend that no valid business relationship existed between Appellees and Dr. Scott. Second, they argue that Appellees have failed to demonstrate that Sigmon’s conduct proximately caused Scott’s withdrawal. Finally, they claim that Appellees failed to allege recoverable damages from Sigmon’s actions.
a. Validity of the Business Relationship
Appellants first argue that no valid business relationship existed because FDA rules and Tennessee Regulations rendered illegal any business relationship between Appellees and Scott. Appellants’ arguments regarding the invalidity of the business relationship fall short.
As the district court discussed, some question remains as to the nature of Ap-pellees’ relationship with Scott (e.g., whether Scott was to be a fact witness, an expert witness, or merely a consulting ex *987 pert). The FDA cleared Scott to work in some capacity with Appellees; he obtained three approvals from his supervisors. Scott did not obtain approval to testify as an “expert witness,” although FDA regulations permit such approval in rare cases. Appellants argue that any business relationship must have been illegal because Scott could not legally testify as a fact witness or as an expert witness.
First, Appellants point to Tennessee Supreme Court Rule 8, Ethical Consideration 7-28, for the proposition that “[a] lawyer should not pay or agree to pay a non-expert witness an amount in excess of reimbursement for expenses and financial loss incident to being a witness.” Appellants claim this renders any fact-witness contract void. But Appellees refer to Scott only as an “expert” witness and consultant.
Appellants then point to a federal regulation they contend prohibits Scott’s involvement as an expert witness. They cite to 21 CFR § 20.1(a), which forbids FDA employees, “except as authorized by the Commissioner,” from providing “any testimony ... with respect to any information acquired in the discharge of [their] official duties.” As the district court pointed out, however, Scott obtained three separate authorizations for his work with Appellees— two for consulting work and one for testimony as a “witness of fact.” Although labeling his role as “witness of fact,” Scott delineated the bounds of his testimony in his request for approval: “to provide factual data about a device type (e.g. how it operates, what it is designed to do)” where the “litigants include patients, doctors and a hospital.” Scott’s departmental “Integrity Officer” approved the request after noting, “Federal Law only prohibits [this type of testimony] in matters before the federal government (18 U.S.C. 203 and 205). Since the government is not involved I see no impediment to your participation....” Thus it appears that Scott obtained specific FDA authorization for his intended testimony, and it is not clear that a court’s or party’s characterization of Scott as an “expert witness” would control the FDA’s internal approval procedures.[1] Even assuming, however, Scott’s inability to testify as planned, Appellants have not demonstrated—in fact, do not even argue—Scott’s consulting arrangement with the Appel-lees to be illegal or invalid.
b. Proximate Cause
Appellants next contend that Appellees failed to show that Sigmon’s actions proximately caused Scott’s withdrawal. The Tennessee Supreme Court defines proximate cause as “a limit on the causal chain, such that, even though the plaintiffs injury would not have happened but for the defendant’s [actions], defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct.” Hale v. Ostrow, 166 S.W.3d 713, 719 (Tenn.2005). “Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established.” Id. (quotation omitted).
As the district court found, Sigmon “sent repeated letters and e-mails” to FDA personnel and “apparently suggested to [the FDA] in some manner that Dr. Scott *988 had acted in violation of FDA policy.” A reasonable person would foresee that such actions could result in Scott withdrawing his services.
Appellants argue that Sigmon’s contacts with the FDA, alerting the agency to “facts that Dr. Scott himself should have disclosed to his superiors,” only prompted the FDA to enforce its own regulations, so that Sigmon’s conduct cannot be considered the proximate cause of Scott’s withdrawal. It remains unclear, however, whether the FDA’s prohibition of Scott’s involvement resulted from its enforcement of its own regulations or instead merely from the FDA’s exercise of an abundance of caution in response to an aggressive attorney. As discussed above, Appellants have pointed to no FDA regulation that would prohibit Scott from acting as a consultant, nor is it clear that any FDA regulation absolutely barred Scott’s proposed testimony.
c. Damages
Appellants’ final argument with respect to the interference claim is that Appellees suffered no recoverable damages. Because the district court found a genuine issue of material fact as to damages, this court reviews for an abuse of discretion. Assuming Appellants correctly categorize some of Appellees’ alleged damages as overly-speculative, Appellants nonetheless fail to explain why Appellees, if they succeed on the merits, would not be entitled to compensation for sums already paid to Scott or for the time, effort, and expense required to procure a replacement consultant/witness. Nothing demonstrates that the district court abused its discretion in finding an issue of fact here.
6. Procurement of Breach
A claimant for inducement and procurement of breach of contract must show: (1) a legal contract; (2) the defendant’s knowledge of the existence of the contract; (3) the defendant’s intention to induce its breach; (4) the defendant’s malicious intent; (5) a breach of the contract; (6) proximate cause of the breach; and (7) resultant damages. B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 218 (Tenn.Ct.App.2004).
Appellants advance arguments against this claim identical to those advanced against intentional interference with a business relationship—the absence of a valid contract,[2] of proximate cause, and of damages—all addressed above in the context of intentional interference with a business relationship.
The single unique argument Appellants advance for this cause of action is that no contract existed for lack of mutual assent. Because the district court found a genuine issue of fact, we review for abuse of discretion. Appellants correctly note that Scott and Appellees characterized Scott’s testimonial role differently. Scott announced that he intended to testify only as a fact witness, while Appellees proffered Scott as an “expert” witness. It is clear, however, that both parties expected Scott to render consultation services, and that Scott sought and obtained permission from his supervisors to testify, even generally describing the content of his expected testimony. Thus, the parties’ differing characterizations of this one aspect of their *989 alleged agreement is not necessarily determinative, and the district court did not abuse its discretion in finding a material issue of fact as to mutual assent.
Ill
We conclude that the district court erred under Tennessee law in denying summary judgment in favor of SVMIC and in favor of all defendants on the abuse-of-process claim. We therefore reverse the district court’s denial of summary judgment in those respects. We affirm the remainder of the district court’s judgment.

. We note that the FDA regulation cited by Appellees prohibits, absent permission, testimony "pertaining to any function of the Food and Drug Administration or with respect to any information acquired in the discharge of his official duties.” Thus the testimony that Scott could have provided under a valid business relationship would be limited to (1) the specific testimony for which he had FDA permission, or (2) other testimony pertaining neither to FDA functions nor information acquired as a result of Scott's official duties.

. As with Appellees’ claim for intentional interference with a business relationship, see supra n. 1, the testimony that Scott could have provided under a valid contract would be limited to (1) the specific testimony for which he had FDA permission, or (2) other testimony pertaining neither to FDA functions nor information acquired as a result of Scott’s official duties.