RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BETTY FREELAND, Administratrix of the
Estate of John L. Freeland, Jr., Deceased and
the Estate of Tina M. Freeland, Deceased;
JOHN L. FREELAND, SR., Guardian of the
Persons and Estate of J.M.F., a Minor,
K.D.F., a Minor, and S.N.F., a Minor,
                              *Plaintiffs-Appellants,*

          *v.*

LIBERTY MUTUAL FIRE INSURANCE CO.,
                              *Defendant-Appellee.*

No. 10-3038

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 09-00341—Peter C. Economus, District Judge.

Argued: January 20, 2011

Decided and Filed: February 4, 2011

Before: MARTIN and STRANCH, Circuit Judges; THAPAR, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Michael D. Rossi, GUARNIERI & SECREST, P.L.L., Warren, Ohio, for
Appellants. Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for
Appellee. **ON BRIEF:** Michael D. Rossi, GUARNIERI & SECREST, P.L.L., Warren,
Ohio, for Appellants. Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills,
Michigan, for Appellee.

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

---

**OPINION**

---

THAPAR, District Judge.  This insurance coverage case arises out of a tragic car accident.  Despite the resources that have been invested in litigating this action, we must dismiss it to start anew in state court because the amount in controversy is one penny short of our jurisdictional minimum.

I.

The plaintiffs-appellants, John and Betty Freeland, loaned their Pontiac Trans Sport minivan to their son, John Freeland, Jr., and his family.  On March 7, 2007, Freeland, Jr. was driving the minivan with his wife and three children in the car when he ran a red light and struck a police cruiser in the middle of an intersection.  Freeland and his wife were killed in the accident.  Their three children survived, but with serious injuries.

The Freelands insured their minivan with the defendant-appellee, Liberty Mutual Fire Insurance Co.  The Freelands' policy provided coverage for bodily injuries up to a "single limit" of $100,000 as well as coverage for accidents caused by uninsured/underinsured motorists ("UM/UIM coverage") up to a "split limit" of $12,500 per person and $25,000 per accident.  Because the Freelands' deceased son did not have car insurance of his own, he was an uninsured motorist.  Therefore, Liberty Mutual offered the Freelands the $25,000 per accident limit of their UM/UIM coverage.  Dissatisfied with the offer, the Freelands filed a lawsuit against Liberty Mutual in Ohio state court.  The complaint alleged that their selection of UM/UIM coverage in 1999 was invalid under the Ohio Supreme Court's decision in *Linko v. Indemnity Insurance Co. of North America*, 739 N.E.2d 338, 342 (Ohio 2000), because the coverage selection form they signed did not contain certain required disclosures.  Because of this invalid selection, the Freelands claimed that they had acquired UM/UIM coverage in an amount equal to their policy's bodily injury coverage by operation of law.  The Freelands

therefore sought a declaratory judgment establishing that their insurance policy provided $100,000 in UM/UIM coverage per accident, instead of the $25,000 per accident stated on the policy's face.

Liberty Mutual removed the case to the United States District Court for the Northern District of Ohio. In the notice of removal, Liberty Mutual asserted that the parties were completely diverse and that the amount in controversy was $100,000—the full amount of UM/UIM coverage to which the Freelands argued they were entitled. Neither party challenged the district court's jurisdiction. On January 5, 2010, the district court granted Liberty Mutual's motion for summary judgment, and the Freelands appealed to this Court.

## II.

The penny is easily the most neglected piece of U.S. currency. Pennies tend to sit at the bottom of change jars or vanish into the cracks between couch cushions. Vending machines and parking meters will not accept them. Many people refuse to bend down to pick up a penny off the ground, deeming the reward not worth the effort. And a member of Congress even introduced legislation that would effectively eliminate the penny by requiring merchants to round their prices to the nearest nickel. *See* Currency Overhaul for an Industrious Nation (COIN) Act, H.R. 5818, 109th Cong. § 3(a) (2006). In this case, however, the penny gets a rare moment in the spotlight. The amount in controversy in this declaratory judgment action is exactly one penny short of the jurisdictional minimum of the federal courts.

Although the district court did not address it and the parties did not raise the issue in their briefs, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Liberty Mutual removed this case to federal court under 28 U.S.C. § 1441(a), which allows removal of civil actions "of which the district courts of the United States have original jurisdiction." Because this case presents no federal question, Liberty Mutual invoked the district court's diversity jurisdiction. Article III of the Constitution authorizes federal jurisdiction in all controversies where

the parties are "citizens of different states." U.S. Const. art. III, § 2. But Congress has always limited this grant of jurisdiction by also requiring that cases satisfy a minimum amount-in-controversy requirement. *See Snyder v. Harris*, 394 U.S. 332, 334 (1969). When Congress first established the lower federal courts in the Judiciary Act of 1789, the required amount in controversy was $500. *Id.* That figure has increased over the years, and today "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.

Yet in this case the amount in controversy is $75,000 exactly—one penny short of the jurisdictional bar that Congress has set. The Freelands seek a declaratory judgment that their insurance policy provides UM/UIM coverage up to $100,000 per accident, instead of the $25,000 per accident maximum that appears on the policy's face. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Applying this principle, this Court has said that, "[w]here a party seeks a declaratory judgment, 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'" *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975)). If the Freelands prevail in this case, they will receive a declaration that their policy provides up to $100,000 in UM/UIM coverage. If they do not prevail, their policy will remain as-is, with only $25,000 in UM/UIM coverage. The "value of the consequences which may result from the litigation," *id.*—that is, the monetary consequences that would result from a victory for the Freelands—is the difference between $100,000 and $25,000. That amount is $75,000 exactly.

This conclusion flows from the text of the jurisdictional statute itself. In order for the district court to have original jurisdiction, "the matter *in controversy*" must "exceed[] the sum or value of $75,000." 28 U.S.C. § 1332 (emphasis added). The words "in controversy" have to mean something. Congress could have written § 1332 to

require only that "the matter exceed the sum or value of $75,000," in which case jurisdiction might be appropriate here. But there is simply no controversy over the first $25,000 of coverage. If the Freelands lose, they will keep that amount of coverage. Indeed, as the Freelands acknowledged in their complaint in state court, Liberty Mutual has already offered the Freelands this amount. The dispute—the controversy—is only over the next $75,000.

Liberty Mutual's offer of $25,000 is not the same, of course, as a settlement offer. A party's offer to settle a case for a specified amount does not reduce the amount in controversy by that amount. If plaintiff sues defendant for $100,000, defendant cannot defeat federal jurisdiction simply by offering to settle the case for $40,000. Here, though, Liberty Mutual's offer is simply an acknowledgment that there is no dispute over the first $25,000 of coverage—the maximum under the Freelands' policy as it is currently written. That amount is the baseline level of coverage that the Freelands will keep even if they lose this lawsuit.

Although no other circuits appear to have addressed the precise jurisdictional issue that this case presents, the Third Circuit's decision in *State Farm Mutual Automobile Insurance Co. v. Powell*, 87 F.3d 93, 97 (3d Cir. 1996), is quite similar. There, the insured had two policies, each providing $50,000 in coverage. The question was whether he could recover under both policies, or whether he was limited to recovering under only one. The insurance company sought a declaratory judgment that the insured could only recover $50,000 under one of his policies, while the insured argued that he could recover a total of $100,000 under both of them. *Id.* at 95-96. Because, "from the outset of [the] litigation [the insurance company] conceded that it owed [the insured] $50,000," the Third Circuit held that the amount in controversy was not $100,000, but rather only $50,000—one penny shy of the jurisdictional threshold at the time. *Id.* at 97. Similarly in this case, Liberty Mutual has always conceded that the Freelands have $25,000 in UM/UIM coverage. That is what their policy provides on its face. The controversy is only over whether their policy provides $75,000 in additional coverage. *See also State Farm Fire & Cas. Co. v. Sweat*, 547 F. Supp. 233, 238 & n.13

(N.D. Ga. 1982) (in declaratory judgment action where insured claimed policy provided $50,000 in coverage and insurance company claimed it provided $5,000 in coverage, amount in controversy was $45,000 because insurance company's "potential liability as a result of this case is in that amount").

The Freelands' demand for interest and costs in their state court complaint does not change this conclusion. Section 1332 demands that the matter in controversy exceed $75,000 "exclusive of interest and costs." Therefore, the amount in controversy remains one penny short. The absence of that single penny deprived the district court of subject-matter jurisdiction over the Freelands' lawsuit. *See, e.g.*, *Powell*, 87 F.3d at 98-99; *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994).

In a supplemental brief filed at the Court's request, Liberty Mutual advances two arguments for finding that the amount in controversy exceeds $75,000. Both lack merit. First, Liberty Mutual argues that the amount in controversy is actually $87,500 because the declaratory judgment the Freelands seek would increase the amount that a single person could recover under their UM/UIM coverage from $12,500 to $100,000. That may be true, but it is not what matters in *this* case. This case involves the $25,000 per accident limit of the Freelands' policy, not the $12,500 per person limit. The Freelands' policy covered four people who were either injured or killed in the accident, and their total injuries easily exceeded $25,000. Indeed, Liberty Mutual has already offered the Freelands the full $25,000 per accident limit. So, the difference between what the Freelands would receive for this accident if they win and what they would receive if they lose is still only $75,000. The corresponding increase in the per person coverage limit is of no consequence in this action.

Liberty Mutual's second argument is that, even if it only faces $75,000 in additional liability in this case, the possibility of future claims under the Freelands' reformed policy nudges the amount in controversy over the limit. This argument also fails. First, the particular policy at issue in this case expired in November 2007, and it is unclear from the record whether the Freelands still have a policy with Liberty Mutual. But even if they do, the unsubstantiated possibility of future claims under an insurance

policy cannot be enough to satisfy the amount in controversy requirement. As Liberty Mutual's counsel conceded at oral argument, this theory has no limit. Under this line of reasoning, a lawsuit involving an insurance policy that provides $1,000 in coverage per accident would have a sufficient amount in controversy because the insured could have 75 more accidents in the future. The amount in controversy requirement would be satisfied in virtually every insurance case. For this reason, courts typically do not include speculative future claims under an insurance policy when determining the amount in controversy. Instead, courts limit their inquiry to the coverage that would apply to the incident in the dispute before them. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270-71 (10th Cir. 1998) (considering only potential liability from underlying incident); *Powell*, 87 F.3d at 95-97 (same).

Resisting this conclusion, Liberty Mutual asserted at oral argument that this Court's unpublished decision in *Lodal* blessed consideration of potential future claims under an insurance policy in assessing the amount in controversy. *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766 (6th Cir. June 12, 1998). This argument misreads *Lodal*. That case involved a dispute over an insurance company's duty to defend its insured and to pay up to $200,000 in litigation costs in an ongoing lawsuit. *Id.* at *1. This Court held that the amount in controversy requirement was satisfied because of "the potential value of future claims under the policy." *Id.* at *3. That statement made perfect sense in *Lodal* because the lawsuit was still ongoing and the insured faced future legal bills from that same action. *Id*. at *2-3. In other words, *Lodal* involved the natural extension of an ongoing liability event. Here, in contrast, Liberty Mutual asks us to rely on the entirely speculative possibility that the Freelands might have another accident in the future involving an uninsured or an underinsured motorist. *Lodal* provides no justification for such an act of judicial star-gazing.

Thus, the amount in controversy in this case is $75,000—exactly one penny short of the jurisdictional minimum of the federal courts. 28 U.S.C. § 1332. The Court recognizes that vacating the district court's judgment and remanding this case is painfully inefficient. This is especially so in light of the substantial resources that have

been spent litigating the merits of this case and the infinitesimal amount by which the amount in controversy falls short.  But the Court simply has no choice in the matter. "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). The district court lacked the authority to grant Liberty Mutual's motion for summary judgment.  The only proper course is to remand this case back to state court for lack of federal jurisdiction.

## III.

For these reasons, we **VACATE** the decision of the district court granting summary judgment in favor of Liberty Mutual and **REMAND** this case to the district court with instructions to remand it back to state court for lack of subject-matter jurisdiction.  Because we lack jurisdiction, we express no opinion on the merits of the Freelands' claim.