**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0022n.06**

**Nos. 19-3349/3387**

| | | |
|---|---|---|
| UNITED STATES COURT OF APPEALS | | FILED |
| FOR THE SIXTH CIRCUIT | | Jan 15, 2020 |
| | | DEBORAH S. HUNT, Clerk |

ADELMAN'S TRUCK PARTS CORP., )
                                                  )    ON APPEAL FROM THE

      Plaintiff-Appellee/Cross Appellant, )    UNITED STATES DISTRICT
                                                  )    COURT FOR THE
v.                                            )    NORTHERN DISTRICT OF
                                                  )    OHIO
JONES TRANSPORT, et al., )
                                                  )    OPINION
      Defendants-Appellants/Cross Appellee. )

---

**BEFORE: SUTTON, BUSH, and READLER, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Don Jones, a small business owner who operated a trucking company, purchased a used motor from Adelman's Truck Parts Corp. After receiving the motor and seeing that it was not what he had hoped for, he contacted Adelman's and demanded money to rectify the situation. Adelman's filed a declaratory judgment action, Jones counterclaimed, and both parties moved for summary judgment. The district court granted Adelman's motion and denied Jones's motion. We **AFFIRM**.

**I.**

On appeal of summary judgment, we review the district court's factual findings for clear error and its legal conclusions de novo. *Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002). Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because the district court granted Adelman's motion for summary judgment, we recite the relevant facts in the light most favorable to Jones. *See Peffer v. Stephens*, 880 F.3d 256, 260 (6th Cir. 2018).

Jones is a small business owner who operated a trucking company until Fall 2017. Around the beginning of October 2017, Jones decided to replace a motor in his truck. The engine that Jones set out to replace was a Caterpillar C-7 motor, serial number WAX 51440, and was capable of 250 horsepower. Jones called Adelman's regarding purchasing a used motor, and during the telephone call, Jones gave Adelman's the serial number of the motor he had been using, and Adelman's told Jones they had an engine that would meet Jones's needs. Based on this conversation, Jones apparently expected that he would be receiving an engine capable of 250 horsepower. Jones agreed, in writing, to pay $5000 for the replacement motor and an additional $304 for freight charges. Importantly, the signed Purchase Agreement did not specify the horsepower of the motor. Rather, the Purchase Agreement indicated only that the purchase was for a "USED CATERPILLAR C-7 MOTOR."

Jones was disappointed to find that the motor he received was capable of only 190 horsepower, not 250 horsepower. The day he received the motor, he called Adelman's and notified it that it had sent the wrong engine. Adelman's told Jones that it did not have a 250-horsepower Caterpillar C-7 motor in stock. It said Jones's only option if he was not satisfied with the motor was to return it for a refund, minus a 20% restocking fee. Jones decided to keep the 190-horsepower motor and instructed his mechanic to install it in his truck.

After the motor was installed, but before Jones ran the motor, Jones's mechanic removed the oil pan from the motor, and found a large broken-off piece of a piston lying inside. The

mechanic also found that the cylinder wall, which is part of the engine block, had been badly scored. After the broken-off piece of a piston was found, Adelman's offered Jones a full refund of the purchase price with the 20% restocking fee waived.

When Jones declined this offer, Adelman's filed a declaratory judgment suit in Ohio state court, and Jones removed to the federal district court, invoking diversity jurisdiction. Adelman's then filed a motion for remand, claiming that the amount-in-controversy requirement was not satisfied. The district court denied Adelman's motion, concluding that "it is clear in this record that the value to Adelman's in enforcing the provisions of this contract is well in excess of $100,000."

Jones then filed a counterclaim for breach of contract and violation of North Carolina's Unfair and Deceptive Trade Practices Act ("NC UDTPA"), and he sought treble, consequential, and punitive damages. The parties next cross-moved for summary judgment. In Adelman's motion for summary judgment, it argued that because Jones had accepted the motor, he could not thereafter revoke the acceptance due to an alleged non-conformity. It also argued that even if Jones could revoke his acceptance, he was limited by the exclusive-remedies provision of the Purchase Agreement, and he could thus not seek recovery of any damages beyond the purchase price of the motor. Finally, Adelman's contended that Jones could not pursue a theory of recovery under the NC UDTPA, given the Purchase Agreement's choice-of-law clause. In Jones's motion for partial summary judgment, he argued that because his claim under the NC UDTPA sounded in tort, the Purchase Agreement did not bar the claim. He further argued that the motor he was received was non-conforming, and because Adelman's could not provide a replacement 250-horsepower motor, the exclusive-remedies provision failed of its essential purpose. Thus, Jones claimed, he was free to seek all potential damages—treble, consequential, and punitive. The

district court granted Adelman's motion and denied Jones's motion. Jones appealed to this court. Adelman's also appealed the district court's denial of its motion to remand.

As a threshold matter, we address Adelman's contention in its cross-appeal that the district court lacked jurisdiction to hear this case because the amount in controversy requirement was not satisfied. We then address Jones's NC UDTPA and breach of contract claims.

## A.      Adelman's motion to remand

Adelman's argues that the amount in controversy requirement has not been met for purposes of diversity jurisdiction.[1] It asserts that because Jones's claims are contractually barred to the extent he seeks damages beyond the purchase price of the motor, this case is nothing more than a dispute over $5,000. The district court denied the motion to remand filed by Adelman's, and we review the district court's legal determinations de novo. *Gafford v. General Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp v. Friend*, 559 U.S. 77 (2010).

In a matter between citizens of different states, a district court possesses subject matter jurisdiction when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "We measure the amount in controversy by 'the value of the object of the litigation.'" *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). We have held that "[w]here a party seeks a declaratory judgment, 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'" *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (alteration in original)

---

[1] Adelman's also argues that the forum-selection clause in the Purchase Agreement negated removal on the basis of diversity. Adelman's failed to make this argument below, so we will not address it on appeal. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991) ("[I]ssues not litigated in the trial court are generally not appropriate for appellate consideration in the first instance.").

(quoting *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at \*2 (6th Cir. June 12, 1998)). The amount in controversy should be considered "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007). The burden is on the removing party "to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount-in-controversy requirement." *Northup Props.*, 567 F.3d at 769–70 (6th Cir. 2001) (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001)).

Because Jones convinces us that the amount in controversy more likely than not exceeds the jurisdictional minimum of $75,000, the district court properly denied Adelman's motion to remand. Jones claims that at the time of removal, his monetary damages were $46,057. Jones also sought emotional distress damages, punitive damages, reasonable attorney fees and treble damages as allowed under the NC UDTPA. *See* N.C. Gen. Stat. §§ 75-16–75-16.1. Trebling Jones's alleged monetary damages would result in an amount in controversy of $138,171, well above the $75,000 requirement. There is no evidence that Jones's damages claims were made in bad faith. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citation omitted) (holding that claims above $75,000 satisfy the amount in controversy requirement so long as they were made in good faith).

**B.      Jones's claim for violation of the NC UDTPA**

Jones asserts that Adelman's engaged in unfair and deceptive acts under the NC UDTPA by lying to Jones about the capabilities of the motor and about Jones's contractual remedies. The district court held that the Purchase Agreement barred the claim. We agree.

The Purchase Agreement includes a choice-of-law clause, which states, "This Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio." (R.

36-3 at PageID 483). Jones argues that because his NC UDTPA claim is more like a tort claim than a contract claim, the contractual choice-of-law provision does not cover his claim. Jones's argument, however, is foreclosed by *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131 (6th Cir. 1991). There, a party that sought to avoid a contract argued that its fraud and misrepresentation claims were not covered by a contractual choice-of-law provision that read, "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan." *Id.* at 1139. We held that the fraud and misrepresentation claims were indeed covered by that language. *Id.* at 1140.

We find no legally significant difference between the choice-of-law clause here and the choice-of-law clause in *Moses*. Here, as there, the clause clearly "refers to more than construction of the agreement; otherwise the first six words would be surplusage." *Id.* at 1139–40. Just as in *Moses*, the choice-of-law clause here governs the agreement and any disputes, whether contractual or tortious, that are directly related to it. *See Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) (holding that a choice-of-law provision was sufficiently broad to cover the plaintiff's claims for fraud and misrepresentation that were "directly related to" the contract). Because Jones's NC UDTPA claim arose out of and is directly related to the Purchase Agreement, it is barred by the Purchase Agreement's choice-of-law clause.

## C.   Jones's breach of contract claim

The district court also properly rejected Jones's breach of contract claim. We need not decide whether the motor that Jones received was non-conforming, because even if it was, Adelman's gave Jones the remedy that he was due under the exclusive-remedies provision of the Purchase Agreement. That provision states:

> SELLER SHALL NOT BE LIABLE TO BUYER AND/OR SUCCESSOR AND/OR ASSIGN OF BUYER FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER LEGAL THEORY. BUYER'S EXCLUSIVE REMEDY RELATING TO THE GOODS SHALL BE LIMIITED SOLELY TO EITHER SELLER'S RETURN OF THE PURCHASE AMOUNT UPON SELLER'S RETURN OF THE NON-CONFORMING GOODS OR SELLER'S REPAIR, CORRECTION AND/OR REPLACEMENT OF ANY OF THE GOODS WHICH ARE DEFECTIVE AND/OR NONCONFORMING.

(R. 36-3 at PageID 483). There is no dispute that Adelman's offered Jones the ability to return the motor. In fact, Adelman's offered to waive the handling charge, which it was not legally required to do.[2]

Jones tries to bypass the exclusive-remedies provision and seek consequential damages, claiming that the provision fails of its essential purpose. The general rule is that a seller may legitimately limit the buyer's remedies to "return of the goods and repayment of the purchase price or to repair and replacement of nonconforming goods or parts." Ohio Rev. Code § 1302.93(A)(i). However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose," consequential damages may be available. *Id.* § 1302.93(B). Such provisions "generally fail only where the seller is unable or unwilling" to comply within a reasonable time. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 56 (1989). Put differently, an exclusive-remedies provision fails of its essential purpose if it "deprives the purchaser of the substantial value of its bargain, *leaving the purchaser without a remedy*." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 614 (N.D. Ohio 2016) (emphasis added) (citations omitted).

Here, Jones was not left without a remedy—he could have returned the motor to Adelman's as the Purchase Agreement specified. He chose not to. Jones appears to argue that the exclusive-

---

[2] The Purchase Agreement stated that there would be a "**20% HANDLING CHARGE ON ALL RETURNS**." (R. 36-3 at PageID 483).

remedies provision failed of its essential purpose because it left him with only one remedy instead of two—that is, he could return the motor but he could not replace it. He notes that he asked Adelman's to replace his 190-horsepower motor with a conforming 250-horsepower motor, and Adelman's told him that it had no 250-horsepower motor in stock. Jones claims that at the moment Adelman's told him that it did not have a 250-horsepower replacement motor, the Purchase Agreement's exclusive-remedies provision failed of its essential purpose, opening the door for Jones to seek consequential damages.

The only case that Jones relies on to support his argument is *Goddard v. Gen. Motors Corp.*, 60 Ohio St. 2d 41 (1979), but that case is distinguishable from this one. *Goddard* concerned a sale of a 1973 Chevy Nova/Vega station wagon governed by an exclusive-remedies provision that conscripted the buyer's remedy to "repair or replacement" of a defective part. *Id.* at 44. The Ohio Supreme Court noted that where the seller is unwilling to *both* repair and replace within a reasonable time, then the exclusive-remedies provision fails of its essential purpose. *Id.* at 45. Here, unlike in *Goddard*, at least one of the remedies afforded by Adelman's to Jones under the Purchase Agreement was timely offered—he could return the motor. Jones simply refused to accept that remedy. Because Jones was afforded the remedy that he was due under the exclusive-remedies provision—he could return the motor—we agree with the district court that the exclusive-remedies provision in the Purchase Agreement did not fail of its essential purpose.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.