NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0325n.06

Case No. 22-1577

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JUANA GISSENDANNER,

    Plaintiff - Appellant,

v.

RIVERSOURCE LIFE INSURANCE
COMPANY,

    Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 17, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

OPINION

Before: MOORE, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Juana Gissendanner was a dental hygienist prior to a car accident that affected her ability to work. Pursuant to her disability insurance policy from RiverSource Life Insurance Company ("RiverSource"), Gissendanner received total disability benefits for over two decades. In 2018, RiverSource determined that Gissendanner was partially rather than totally disabled and recalculated her benefits accordingly. Gissendanner sued, and the district court granted summary judgment to RiverSource. Because the amount in controversy in this case is less than $75,000, the district court lacked subject matter jurisdiction over this action. Accordingly, we vacate the district court's order and remand with instructions to remand this case to the state court.

I.

In 1994, Gissendanner purchased a disability income insurance policy from RiverSource. Gissendanner's policy contemplates two tiers of disability benefits. Gissendanner is entitled to

"total disability" benefits if, "because of injury or sickness," she is "[u]nable to perform the important duties of [her] regular occupation." DE 21-2, Policy, Page ID 283. Gissendanner is entitled to "partial disability" benefits if, "although [she] perform[s] one or more important duties of [her] regular occupation," her "monthly earnings are reduced to 80% or less of [her] monthly earnings before disability began." *Id.*

In 1997, Gissendanner was injured in a car accident. Gissendanner filed a claim under her policy, and RiverSource began paying total disability benefits.

Since Gissendanner began receiving disability benefits pursuant to her policy, RiverSource has reviewed her eligibility on an annual basis. At the conclusion of its review for 2018, RiverSource determined that Gissendanner was partially rather than totally disabled. Accordingly, RiverSource asked Gissendanner to repay the difference between the total disability benefit payments she had received and the partial disability benefit payments to which RiverSource believed she was entitled going back to January 1, 2018. It also began considering her partially rather than totally disabled for purposes of subsequent benefit payments.

Gissendanner sued for breach of contract and bad faith denial of an insurance claim, and RiverSource removed to federal court based on diversity jurisdiction. Gissendanner alleged in her complaint that before she was reclassified as partially disabled, RiverSource paid her "$2[,]080 per month." DE 1-2, Compl., Page ID 9. She alleged that "she is owed $289,120 through the end of her policy," which will expire when she turns 65 in December 2030. *Id.* at 10. Gissendanner also alleged that the amount of difference between total and partial disability payments that RiverSource retroactively demanded she repay was $16,910.40. *Id.* at 9. In addition to compensatory damages, Gissendanner also sought punitive damages. *Id.* at 12. Gissendanner filed her complaint on February 4, 2021. *Id.* at 7.

After discovery, the district court granted summary judgment to RiverSource on the ground that Gissendanner was only partially disabled pursuant to the terms of her policy. Gissendanner timely appealed.

After full merits briefing and oral argument, we came to doubt that the amount in controversy in this case exceeds $75,000 for purposes of subject matter jurisdiction. We requested supplemental briefing from the parties on that issue. RiverSource filed a supplemental brief arguing that the amount in controversy exceeds $75,000. Gissendanner joined in RiverSource's brief to the extent that it made this argument.

## II.

Although no party contests jurisdiction, we have an independent obligation to consider our subject matter jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). The district court exercised jurisdiction over this suit pursuant to 28 U.S.C. § 1332, which confers federal jurisdiction over cases between "citizens of different States" in which "the matter in controversy exceeds the sum or value of $75,000." There is complete diversity between the parties here because Gissendanner is a citizen of Michigan and RiverSource is a Minnesota corporation with its principal place of business in Minnesota. Therefore, the district court had subject matter jurisdiction if the amount in controversy in this case exceeds $75,000.

The amount in controversy is assessed as of the time that the complaint is filed. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920 n.1 (6th Cir. 2000) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990)). Where, as here, a plaintiff does not contest a defendant's removal of a case to federal court, a defendant need only plausibly allege that the amount in controversy exceeds $75,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014). In its notice of removal, RiverSource relied on Gissendanner's demand for "$289,120 plus punitive

damages, costs, and attorney fees" to meet this modest hurdle. DE 1, Notice of Removal, Page ID 3. But "interest and costs" are expressly excluded from the jurisdictional amount. 28 U.S.C. § 1332(a). Thus, the district court had subject matter jurisdiction if any combination of Gissendanner's demand for 1) compensatory damages of $289,120; 2) punitive damages; and 3) attorney fees plausibly suggests that the amount in controversy in this case is over $75,000.

We begin with Gissendanner's demand for $289,120, an amount that would easily satisfy the jurisdictional requirement if it were plausibly in controversy. With certain exceptions not relevant here, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). This good faith standard is objective and asks whether it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

In this case, Gissendanner's complaint makes clear that her $289,120 demand represents all payments from RiverSource to which she believes she will be entitled until her disability insurance policy ends in December 2030. *See* DE 1-2, Compl., Page ID 10. However, "courts typically do not include speculative future clams under an insurance policy when determining the amount in controversy." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 254 (6th Cir. 2011). More specifically,

> future potential benefits may not be taken into consideration in the computation of the amount in controversy in diversity actions in Federal District Courts involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy.

*Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416-17 (6th Cir. 1996) (quoting Joseph E. Edwards, *Annotation, Determination of Requisite Amount in Controversy in Diversity Action in Federal District Court Involving Liability Under, or Validity of, Disability Insurance*, 11 A.L.R. Fed. 120,

132 (1972)). After all, as in many other insurance contexts, an insured's entitlement to future disability insurance payments depends on contingent events that may not happen, most obviously her disability status.

The Supreme Court encountered a situation like this one nearly a century ago in *New York Life Ins. Co. v. Viglas*, 297 U.S. 672 (1936). Like Gissendanner, the insured in *Viglas* held a policy that entitled him to monthly payments if he met certain criteria for total disability. *Id.* at 674. The insurance company could demand proof of continued disability and could cease payments upon failure to provide such proof or if it learned that the insured was gainfully employed. *Id.* The insured began receiving monthly income payments after an injury, but the insurance company ceased payments after approximately two years on the ground that the insured was no longer disabled. *Id.* at 675.

Most relevant here, the insured in *Viglas* said that the amount in controversy requirement was met based on a theory of damages that included "the total benefits that will be payable to him during the [period of his expectancy of life under the American Table of Mortality], if he lives that long and his disability continues." *Id.* at 675-76. Writing for a unanimous Court, Justice Cardozo rejected the argument that "conditional and future benefits" could be "the measure of recovery" for jurisdictional purposes. *Id.* at 676. Instead, "the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit." *Id.* at 678. Justice Fortas cited *Viglas* for the proposition that "the general rule is that if suit is brought only for past installments due under an installment contract, the jurisdictional amount is in controversy only if the installments due at the time of suit exceed the jurisdictional amount." *Snyder v. Harris*, 394 U.S. 332, 354 n.20 (1969) (Fortas, J., dissenting) (citing *Viglas*, 297 U.S. 672); *see also Aetna Cas. & Sur. Co. v. Flowers*, 330 U.S. 464, 467 (1947) (same).

We see, and RiverSource proposes, nothing to distinguish the issue we confront here from the situation in *Viglas*. Thus, Gissendanner's demand for $289,120 can satisfy the jurisdictional requirement only to the extent that it plausibly represents "the benefits in default at the commencement of the suit." *Viglas*, 297 U.S. at 678. But the vast majority of the sum cited in Gissendanner's complaint plainly represents not benefits actually in default at the time of suit but rather benefits to which Gissendanner believed that she would be entitled in the future, specifically through December 2030.

Although Gissendanner's complaint and attached exhibits are not entirely clear as to the amount of benefits allegedly due at the time of the commencement of the suit, they do make clear that that amount must have been well under $75,000. First, the complaint itself suggests that the difference between total and partial disability benefit payments "for one year" was $16,910.40. DE 1-2, Compl. Page ID 9. Under our case law, it is that difference—between the amount the insured claims and the amount the insurer concedes it should pay—that represents the amount "in controversy" in an insurance case. *See Freeland*, 632 F.3d at 253. Because Gissendanner filed her complaint in early 2021, about three years after the beginning of 2018, the complaint itself would seem to suggest that the amount of "benefits in default at the commencement of the suit," *Viglas*, 297 U.S. at 678, was probably about three times the $16,910.40, or $50,731.20. Adding another one-twelfth of the annual figure to account for January 2021 brings the total to $52,140.40.

However, Gissendanner also attached an exhibit to her complaint that instead seems to suggest that the $16,910.40 figure represents the difference between total and partial disability benefits for the period from January 2018 through July 2019—a span of seventeen months, not one year. *See* DE 1-2, Compl. Ex.2, Page ID 45. In that case, a similar calculation to the above yields an amount of only $36,804.99 for the 37 months from January 2018 through January 2021.

Finally, RiverSource has its own method of calculating the amount of "accrued" benefits to which Gissendanner's complaint suggests that she would be entitled. CA6 R. 36, RiverSource Supp. Br., at 3. In RiverSource's view, that amount consists of "total disability benefits of $2,080 per month between August 2019 and January 2021," plus the $16,910.40 for January 2018 through July 2019, for a sum of $54,350.40. *Id.* At first blush, this approach would seem to ignore that it is not the full amount of total disability benefits, but rather the *difference* between total and partial disability benefits, that represents the amount in controversy in this case. *Freeland*, 632 F.3d at 253. However, the relevant exhibit to Gissendanner's complaint does suggest that the amount of partial disability benefits due in some months between January 2018 and July 2019 was $0. DE 1-2, Compl., Ex. Page ID 45. Extrapolating from this lower bound, and giving RiverSource the benefit of every doubt, it may thus be plausible to assume that the amount in controversy for each month between August 2019 and January 2021 could be up to $2,080. Even so, the amount of benefits due at the time of the commencement of the suit would still be well under $75,000.

In fact, RiverSource does not call our attention to anything in the complaint that suggests that the unpaid benefits due at the time of the commencement of the suit might have been more than $75,000. (Indeed, as discussed above, RiverSource confirms that it reads the complaint to allege a substantially lower amount.) Nor does the complaint identify any legal basis on which a court could award Gissendanner future benefits. For example, RiverSource does not argue, nor do we perceive, that anything in Gissendanner's complaint supports a plausible legal theory that RiverSource repudiated or anticipatorily breached the policy such that its full value should be the measure of damages. *See Viglas*, 297 U.S. at 676-78. On the contrary, Gissendanner's complaint says that RiverSource continued to consider Gissendanner eligible for partial disability payments, meaning RiverSource continued to perform under its revised understanding of Gissendanner's

disability status. *See* DE 1-2, Compl., Page ID 9-10. By the same token, Gissendanner's complaint cites no contractual basis upon which a court could award her acceleration of future benefits as a remedy for RiverSource's alleged breach. *See Lutz v. Dutmer*, 282 N.W. 431, 438 (Mich. 1938) ("The trial court had no authority to decree the entire amount due in the absence of an acceleration clause in the contract.").

Thus, it "appear[s] to a legal certainty" on the face of the complaint that the potential compensatory damages for RiverSource's alleged breach of contract in this case are well under $75,000. *Red Cab Co.*, 303 U.S. at 289. RiverSource resists this conclusion, relying primarily on the general principle that only a "probability" rather than "absolute certainty" is required as to the jurisdictional amount. *See Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005) (quoting *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976)). As our case law acknowledges, though, that principle often does limited work in a case like this where the alleged damages are not indefinite because they are fixed by the terms of a contract (at least within a definable range). *Cf. Kovacs*, 406 F.3d at 395 (differentiating between claims that involve liquidated damages and those that do not); *Wood v. Stark Tri-Cnty. Bldg. Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973) (same). It certainly does not give federal courts the power to excuse failure to meet the jurisdictional amount in cases where the amount in controversy is somewhere close. *See Freeland*, 632 F.3d at 255 (no jurisdiction where amount in controversy was exactly $75,000).

RiverSource also says we should consider future benefits as part of the amount in controversy pursuant to our unpublished decision in *Lodal, Inc. v. Home Ins. Co. of Ill.*, 156 F.3d 1230 (Table), 1998 WL 393766 (6th Cir. June 12, 1998). As we have explained before, *Lodal* did not consider hypothetical new claims based on events that might (or might not) occur in the future

as a basis for meeting the jurisdictional amount in controversy. *See Freeland*, 632 F.3d at 254-55. Rather, *Lodal* concerned an insurance company's duty to defend its insured against a single lawsuit that had already begun. 1998 WL 393766, at *1. Although there would be future expenses associated with that lawsuit, those expenses "involved the natural extension of an ongoing liability event." *Freeland*, 632 F.3d at 255. The same cannot be said here, where RiverSource's future liability to make disability insurance payments to Gissendanner will not directly depend on the outcome of this case with respect to the years that it concerns, but rather on Gissendanner's disability status at relevant times after her complaint in this case.

Accordingly, federal jurisdiction in this case, if it exists, must additionally depend on the value of some form of relief sought by Gissendanner other than compensatory damages. RiverSource offers two possibilities.

First, RiverSource says that Gissendanner's complaint sought a declaratory judgment that she is entitled to $289,120. We disagree. Gissendanner never mentioned a declaratory judgment or any other form of equitable relief in her complaint. *See generally* DE 1-2, Compl., Page ID 7-12. Instead, she "pray[ed] that the Court grant, through a jury, damages plus interest, costs, and all expenses related to collection, attorney fees and punitive damages." *Id.* at 12. That list does not include a declaratory judgment. But even if Gissendanner had styled her request for $289,120 as seeking a declaratory judgment, which she did not, that recharacterization would not change the substance of the relief at issue, which would still consist of "future potential benefits" that are not appropriate for consideration as part of the amount in controversy. *Harmon*, 88 F.3d at 416. In other words, what matters is not whether Gissendanner's request for $289,120 is best characterized as a request for damages or for declaratory relief, but rather that, however characterized, her

request has no plausible legal basis and therefore cannot establish the amount in controversy. *See Viglas*, 297 U.S. at 676-78.

Second, RiverSource relies on Gissendanner's request for punitive damages. Under Michigan law, punitive damages are not available for breach of contract in the absence of tortious conduct independent of the breach. *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 55 (Mich. 1980). We do not perceive even a conclusory allegation of any such conduct in Gissendanner's complaint. *See generally* DE 1-2, Compl., Page ID 7-12. Instead, the complaint states that Gissendanner is seeking punitive damages for RiverSource's "refusal to follow a clear contractual provision" and "devious attempt[] to skirt clear contractual obligations." *Id.* at 12. Thus, Gissendanner's complaint makes clear that she is seeking punitive damages for the breach of contract itself, something Michigan law does not allow. Moreover, while Gissendanner's complaint also includes a count for bad faith denial of an insurance claim, Michigan law recognizes no such cause of action. *Kewin*, 295 N.W.2d at 56. Thus, it is "apparent to a legal certainty" that Gissendanner could not recover punitive damages based on the allegations in her complaint. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (quoting *Holley Equip. Corp. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)); *see also Parmelee v. Ackerman*, 252 F.2d 721, 722 (6th Cir. 1958) (holding that it was apparent to a legal certainty that the jurisdictional threshold was not met because emotional distress damages were not available for breach of contract).

RiverSource does not rely on Gissendanner's request for attorney fees in its briefing on jurisdiction, and we also see no basis to consider attorney fees as part of the amount in controversy. A request for attorney fees generally does not support a determination that the amount in controversy is met, but may do so if recovery of attorney fees is expressly allowed by contract or

statute. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). We perceive nothing in the complaint to indicate that Gissendanner's policy provides for recovery of attorney fees, and Michigan courts have rejected claims that even bad faith permits an award of attorney fees in insurance cases. *See Burnside v. State Farm Fire & Cas. Co.*, 528 N.W.2d 749, 753 (Mich. Ct. App. 1995); *Isagholian v. Transam. Ins. Corp.*, 527 N.W.2d 13, 18 (Mich. Ct. App. 1994).

Thus, the amount in controversy in this case could be no more than $54,350.40, far short of the jurisdictional requirement of $75,000. Because the requirements of § 1332 were unmet from the outset, the district court never had subject matter jurisdiction over this action.

### III.

We vacate the district court's order and remand with instructions to remand this case to the state court based on lack of subject matter jurisdiction.